BENEDICT, District Judge.
These are actions to recover salvage compensation for services rendered in towing the steamship George W. Clyde at the Narrows on the afternoon of February 29, 1896. The steamer George W. Clyde, a coastwise iron steamer, 250 feet long, having on board some cargo and passengers, outward bound, when passing through the Narrows, in a dense fog, encountered a collision which stove a large hole in her port side, .and put her in danger of sinking immediately. When struck, she was in the middle of the channel at the Narrows, where the water was from 60 to 80 feet deep. The fog lifted almost immediately after the collision, and two steam tugs, the Joshua Lovett and the Dudley Pray, belonging to the Commercial Towboat Company, chanced to be opportunely within hailing distance. These towboats were immediately hailed by the master of the George W. Clyde, and, coming alongside of the Clyde on her starboard side, they passed their lines to her, and at once towed her to shore, some 800 to 1,000 feet away, where she was beached in safety. These towboats were made fast in about three minutes, and the vessel was beached in. about fifteen minutes, time. There was no risk encountered by the tugs, no extraordinary exertion was put forth, and the towage was of .an ordinary character. The service was, however, rendered promptly, and it saved the Clyde from the danger of sinking in deep water. I think that salvage compensation may well be .awarded these tugs, and, in my opinion, $1,000 will be sufficient *158 salvage compensation for them both. I do not apportion the sum between the two boats, for the reason that they are owned by the-same company.
At about the same time the steam tug Scandinavian, a tugboat belonging to the libelants Lewis Luckenbach and others, came up-to the port bow of the Clyde. The object of her approach to the-Clyde is plainly stated by Mr. Quail, who was on board of the Scandinavian for the Morning Journal, and who claims to have been in command of that tug as owner pro hac vice. This witness said:“I ordered Capt. • Olson to lay the Scandinavian alongside of the Clyde, so that we might take off the crew and passengers.” Again :■ “The tug’s boarding ladder was put up to the side of the Clyde for-no other purpose than to allow the crew and passengers of the Clyde to descend in safety to the tug.” Again: “It was because of my desire to take these people off that the Scandinavian was; first made fast to the Clyde, so as to keep her alongside until she-got the people off.” There is testimony showing that, when the Scandinavian approached, she approached in a shape that would' render her assistance useless. But, however that may be, she got out one five-inch line, and made fast to the Clyde, and, after the crew and passengers were taken off, she no doubt, by means of her-line, applied some power to the Clyde. But she received no orders from the Clyde, was not asked to render assistance, and the evidence shows plainly that her assistance was not needed. The two tugs that already were there, that were called at the request of the captain of the Clyde, and whose lines those on the Clyde-had taken and fastened, were abundantly sufficient to put the Clyde in a place of safety. Under such a state of facts, in my opinion, the Scandinavian is not entitled to salvage—First, because-her services were not needed nor furnished at the request of the-captain of the Clyde; second, because, according to the testimony-of Quail, the only object of her exertions was to take off the crew and passengers. Services of that character do not give rise to a-claim for salvage against the ship.. In my opinion, therefore, the-claims of the Morning Journal and of Lewis Luckenbach and others for services rendered by the Scandinavian must be rejected. The decree will be that the libel of Lewis Luckenbach and others be dismissed, without costs; also the libel of the Morning Journal will be dismissed, without costs. On the libel of the Commercial! Towboat Company the decree will be for $1,000 and costs.